

# THE ATTORNEY GENERAL
## OF TEXAS

**Gerald C. Mann**

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Geo. A. Hight, Chief Accountant
Board of County and District Road Indebtedness
Austin, Texas

Dear Sir:

Opinion Number O-2320
Re: Right of a county to use funds
credited to road districts under
option "E", paragraph 5, subsection
(h), Section 6 of House Bill 688,
passed by the Forty-sixth Legislature,
Regular Session, 1939.

We are in receipt of your request for an opinion on
the following question:

"Please advise this department whether or not
Smith County may elect to use the funds credited
to the above district under option "E" of Section
(h), House Bill 688, for the construction of farm-
to-market roads outside Smith County Road Districts
Nos. 2, 5 and 6."

The facts underlying your question are that Road Dis-
tricts Numbers 2, 5 and 6 of Smith County have road bonds out-
standing, the proceeds of which were expended in the construc-
tion of roads within each of the named districts and which
roads subsequent to September 17, 1932, and prior to January
2, 1939, were designated as State highways, and under the pro-
visions of House Bill 688 said obligations became eligible
for participation in the funds accruing to the County and Road
District Highway Fund. Likewise, such districts became eligi-
ble for retroactive payments dating from the designation of
said roads as a part of the State Highway System to January
2, 1939, as is provided in subsection (a) of Section 6 of
House Bill 688.

Pursuant to such provision there is now on hand to
the credit of the above named road districts certain sums
of money representing retroactive payments made by the
State in compliance with such law, and in further compli-
ance such sums have been credited to the Lateral Road Ac-
count of Smith County for the benefit of Road Districts Nos.
2, 5 and 6.

Reducing your question to its simplest form, we con-
strue it to be — "May Smith County, as a county, use funds
(under option "E" of said bill) belonging to road districts
situated within said county?" Unless these funds possess
some character distinguishing them from funds which are gen-
erally allocated to specific recipients and are regarded

solely as the property of such recipients, we must conclude that the county is without authority to use such funds in any manner other than that which will confer a direct benefit upon the district entitled thereto.

We call your attention to the language used in paragraph 2 of Section 1 of House Bill 688, which reads, in part, as follows:

> " * * * It is further declared to be the policy of the State to take over, acquire, purchase and retain the interest and equities of the various counties and <u>defined road districts</u> in and to the highways not previously taken over, acquired and purchased, and constituting on January 2, 1939, a part of the system of designated State highways, * * *. And it is hereby determined that the further provisions of this Act constitute fair, just and equitable compensation, repayment and reimbursement to such counties and <u>defined road districts,</u> and for their aid and assistance to the State in the construction of State highways * * *, and fully discharges the legally implied obligations of the State to compensate, repay and reimburse the agencies of the State for expenses incurred at the instance and solicitation of the State, as well as for expenses incurred for the benefit of the State * * *". (Underscoring ours)

It seems clear to us that the Legislature intended to repay and reimburse defined road districts, as well as counties, for their aid and assistance in the construction of State highways, and the funds provided by the Act are declared to constitute fair, just and equitable compensation for such assistance.

Subsection (a) of Section 6 details the method prescribed by the Legislature to effect this repayment and reimbursement. In paragraph 1 thereof, after making eligible for participation such roads as had been designated a part of the State System prior to January 2, 1939, it is provided - "That such indebtedness, the proceeds of which have been expended in the construction of roads which have been designated as a part of the State Highway System, after September 17, 1932, and prior to January 2, 1939, shall participate in said County and Road District Highway Fund as of the date of the designation of said road as a part of the State System * * *". During that interval between the designation of the road and the time when House Bill 688 became effective, various counties and defined road districts continued to discharge and pay obligations created for the construction of such roads, and the State considering itself impliedly obligated to repay such counties and defined road districts for the funds so expended, it authorized retroactive payments by the Board of County and District Road Indebtedness to accomplish this reimbursement. In accordance with the information contained in your letter, we assume that such funds as are now credited to the various defined road districts, above enumerated, in the Lateral Road Account of this county, represent such funds as are provided to be paid pursuant thereto. It seems, therefore, that there can be little doubt but that these funds are the property of Road Districts Nos. 2, 5 and 6, and would not therefore be subject

to disbursement by the county for any purpose other than that which would confer a direct benefit upon the taxpayers living within such road districts.

In paragraph 5, subsection (h) of Section 6, we find the Legislature's instructions as to how funds remaining in the Lateral Road Fund shall be disbursed, and while apparently the language used pertains only to funds of a county remaining in such fund, we think the intention was clearly expressed in subsequent language appearing in said paragraph. The pertinent part of the law in this paragraph reads as follows:

"Funds remaining in the Lateral Road Fund of any county after the payment of said right-of-way obligations, may be used by the county under the direction of the commissioners' court for any one or all of the following purposes: (a) for the acquisition of rights-of-way for county lateral roads, and for the payment of legal obligations incurred therefor prior to January 2, 1939; (b) the construction or improvement of county lateral roads; (c) for paying the principal, interest and sinking fund requirements of any bonds or warrants which were legally issued by such county, or <u>road district</u> prior to January 2, 1939, the proceeds of which were actually expended in the construction or improvement of lateral county roads; (d) for the purpose of supplementing funds appropriated by the United States Government for Works Progress Administration highway construction, Public Works Administration highway construction, and such other grants of Federal funds as may be made available to the counties of this State for county lateral road construction; and (e) for the purpose of cooperating with the State Highway Department and the Federal Government in the construction of farm-to-market roads."

It seems to us that the Legislature recognized the fact that defined road districts had not the power to expend moneys allocated to it under the provisions of this Act, and placed that power properly in the hands of the Commissioners' Court, but it further recognized, as is evident in Section (b) where the term "road district" is used for the first and only time in that paragraph, that the only continuing responsibility of the road district was to retire such bonds as had been authorized by the taxpayers living within such defined area, that the construction and improvement of lateral roads lying within such defined area was an obligation of the county in the absence of special action by the taxpayers living within that area authorizing the issuance of bonds for the purpose of constructing lateral roads within such area. Such roads as exist within a road district that have not been built with funds provided by the road districts as such, comprise a part of the county lateral road system which should be paid for with county funds. In this instance, funds mentioned in your letter represent a repayment by the State of money expended by the taxpayers of those districts and the benefit of such repayment, under the terms of the Act, is intended for the taxpayers living within that area, and it is our opinion that such benefits should be conferred direct-

ly by the application thereof to the outstanding debt of the defined road district.

Accordingly, we must advise that, in our opinion, the county is without authority to use the funds specifically credited to the various defined road districts by the terms of this Act for any purpose except that which would confer a direct benefit upon the taxpayers living within those particular defined road districts, and in harmony with such construction we advise that the county cannot expend road district moneys pursuant to the option provided in Section "E", paragraph 5, subsection (h), Section 6 of House Bill 688.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Clarence E. Crowe
Clarence E. Crowe
Assistant

CEC-s:jrb

APPROVED MAY 18, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
BY R.W.F.,Chairman